**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JENNIFER GAIL ROCCO,**

                      **Petitioner,**

**v.**                                             **Case No:   6:14-cv-619-Orl-31TBS**

**IVAN FERNANDO ROCCO,**

                      **Respondent.**

_____

## ORDER

       This matter is before the Court on a Petition for Return of Child to Petitioner ("Petition"). (Doc. 1). On April 28, 2014, the Court issued an order requiring Respondent to show cause why the children should not be returned to Australia. (Doc. 3). Respondent filed his response on May 14, 2014 (Doc. 14), and an evidentiary hearing was held on May 16, 2014.[1] The Petition was brought by the mother of three children pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99–11, *reprinted in* 51 Fed.Reg. 10,494 (Mar. 26, 1986), as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-10 (2012). Under ICARA, when a child has been wrongfully removed from its habitual residence a parent may petition a United States District Court to order the childs' return to any country that is a signatory to the Hague Convention. *Id.* § 11603(b).

---

      [1] Petitioner was not present for the hearing and Petitioner's counsel indicated that her presence was not necessary for a decision on the merits.

## I.    Factual Background

The parties are the married parents of minor children S.R., E.R., and D.R. (the "children"). The parties were married in Florida in 2001.[2] E.R. and D.R. were born and raised in Florida. (*See* Pet'r's. Ex.; Doc. 16). While S.R. was born in Australia, he has resided in the United States for a great majority of his life. (*Id.*). At the evidentiary hearing the Respondent testified that, aside from the events of this case and S.R.'s birth, the children have only been to Australia once before for a three week Christmas vacation.[3]

In February of 2013 the Petitioner ("mother") and the children traveled to Australia so she could secure medical treatment and be near her family. The Respondent ("father") remained in Florida until June of 2013, when he visited the mother and children for three months in Australia and returned to the United States in early September. By November of 2013 the father had been experiencing deteriorating communication with the mother and difficulties contacting the children. He flew to Australia and shortly after the mother dropped the children off at school, took the children and returned to the United States. Following their return to the United States, the mother filed this Petition alleging the father wrongfully removed their three children from Australia.[4]

---

[2] Petitioner is a citizen of Australia with permanent residence status in the United States. Respondent is a citizen of the United States.

[3] This vacation occurred prior to D.R.'s birth, accordingly, the travel at issue in this case is the first time D.R. has gone to Australia.

[4] Australia and the United States are Contracting States to the Hague Convention. *See Status Table*, *Convention of 25 October 1980 on the Civil Aspects OF International Child Abduction,* HAGUE CONFERENCE ON INT'L LAW, http://www.hcch.net/index_en.php?act=conventions.status&cid=24 (last updated April 10, 2014).

## II. Standard of Review

In a petition for return of children, the petitioner bears the burden of proving by a preponderance of the evidence that the removal occurred where the children habitually reside. 42 U.S.C. § 11603(e)(1)(A); *Sorenson v. Sorenson*, 563 F. Supp. 2d 961, 967 (D. Minn. 2008). If the petitioner meets this burden, then the children must be promptly returned unless an exception applies. *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (citing 42 U.S.C. § 11601(a)(4)).

Neither the Hague Convention nor ICARA defines habitual residence. However, "[f]ederal courts have developed a two-part framework to assist in the habitual residence analysis." *Maxwell v. Maxwell*, 588 F.3d 245, 251 (4th Cir. 2009). The framework is a fact-specific inquiry which evaluates what the parents intended as well as the living situation to which the children are acclimated. *Boehm v. Boehm*, No. 8:10–CV–1986–T–27TGW, 2011 WL 863066 at *3 (M.D. Fla. March 10, 2011).

The first part of the analysis is "whether the parents shared a settled intention to abandon the former country of residence" and settle in a new country. *See Maxwell*, 588 F.3d at 251. When present, shared intent is given significant weight in the habitual residence analysis because parents typically dictate where a child lives. *See Boehm*, 2011 WL 863066 at *4. It also minimizes the incentive for one parent to abscond with their child. *Id.*; *see also Mozes*, 239 F.3d at 1077 (holding that a determination of shared intent creates an inference that the child's prior residence was abandoned). Courts look at the "historical and narrative facts" surrounding the travel to determine the parents' intent. *See Ruiz v. Tenorio*, 392 F.3d at 1253 (11th Cir. 2004) (quoting *Mozes*, 239 F.3d at 1077-78).

> Relevant considerations determining the parties' intent include "parental employment in the new country of residence; the purchase of a home in the new country and the sale of a home in the former country; marital stability; the retention of close ties to the former

> country; the storage and shipment of family possessions; the citizenship status of the parents and children; and the stability of the home environment in the new country of residence."

*Boehm*, 2011 WL 863066 at *3 (quoting *Maxwell,* 588 F.3d at 252). Absent shared intent, the Court must look to the second part of the analysis to determine a child's habitual residence. *See Ruiz*, 392 F.3d at 1254.

The second part of the analysis determines whether there has been "passage of an appreciable period of time, one sufficient for acclimatization by the children to the new environment." *Maxwell*, 588 F.3d at 251 (citation omitted). In essence, the Court must assess whether the children have become "firmly rooted" in the new surroundings. *Holder v. Holder*, 392 F.3d 1009, 1019 (9th Cir. 2004).

### III.    Legal Analysis

In this case the parents dispute whether they shared an intention to settle in Australia. At the May 16, 2014 evidentiary hearing, the father testified that he never intended the children to stay in Australia, and the visit was meant to be temporary. (*See also* Doc. 14 ¶¶ 3-4). In support of his assertion he pointed out there were no overt actions taken by the parties to abandon their established roots in Florida. A home was not secured for the family in Australia. (*Id.* ¶ 8). Neither the father nor the mother sought employment in Australia. (*Id.*). The parents did not open a joint bank account in Australia. (*Id.*). Additionally, the father renewed his residential lease in the United States while the children were living in Australia. (*Id.* ¶ 9). Moreover, the parties kept their joint bank account in the United States. (*Id.* ¶ 8). On the other hand, the mother asserts the father's assistance in acquiring the children's' Australian citizenship points to a shared intent to change habitual residence. (*See* Doc. 16; Pet'r's. Ex. (application for the return of a child submitted to the Attorney General of Australia detailing the facts surrounding the travel)). However, the father disputes this point, claiming the children's dual-citizenship was merely to allow them to enroll in school during the temporary stay.

(Doc. 14 ¶ 8). It is clear from the evidence that the father did not intend to abandon the United States and move the family to Australia permanently.

When the parents do not share an intent to abandon the former residence, such as in this case, the Court must turn to the second part of the analysis and determine whether the children have become firmly rooted in Australia. *See Ruiz*, 392 F.3d at 1255; *Holder*, 392 F.3d at 1019. Here, the children resided in Australia for only nine months, half of which occurred during summer vacation. The children have grown up and attended school in Central Florida for the vast majority of their lives. Their only prior exposure to Australia was a Christmas trip of about twenty-five days that only included two of the three children.

In addition, the living arrangement further hindered the children's acclimatization to Australia. The father testified at the evidentiary hearing that the family shared an overcrowded residence with relatives of the mother, where the children had to share bedrooms and beds. Furthermore, the majority of the children's possessions remained in Florida, as they were only able to bring a few suitcases on the flight to Australia. (*See also* Doc. 14 ¶ 8).

Thus, the Court finds the children's prior Florida residence has not been abandoned and habitual residence in Australia has not been established. The history of this case confirms that the children consider the United States to be their home. Since the children's habitual residence is the United States, the Court will not order their return to Australia.

It is, therefore,

**ORDERED** that the Petition (Doc. 1) is **DENIED**. The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 27, 2014.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party